UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>(1) CAROLYN M. LOUPER-MORRIS and<br>(2) WILLIAM J. MORRIS, JR.,<br><br>Defendants. | Criminal No. 08-063 (JRT/JSM)<br><br>**ORDER ADOPTING THE REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE** |

John R. Martin, Timothy C. Rank, and David M. Genrich, Assistant United States Attorneys, **UNITED STATES ATTORNEY'S OFFICE**, 600 United States Courthouse, 300 South Fourth Street, Minneapolis, MN 55415, for plaintiff.

Paul J. Edlund, 212 Third Avenue North, Suite 545, Minneapolis, MN 55401, for defendant Carolyn M. Louper-Morris.

Thomas M. Kelly, **KELLY & JACOBSON**, 220 South Sixth Street, Suite 215, Minneapolis, MN 55402, for defendant William J. Morris, Jr.

On February 26, 2008, a grand jury returned an indictment (the "Indictment") against Carolyn M. Louper-Morris ("Louper-Morris") and William J. Morris, Jr. ("Morris") (collectively, "defendants"), charging defendants with twenty-two counts of conspiracy, mail fraud, wire fraud, and money laundering, and charging Morris with one count of making and subscribing a false tax return. On May 22, 2009, almost two months after the pretrial motions filing deadline, defendants filed a motion for an extension of time to file pretrial motions and a motion to dismiss the Indictment. In a Report and Recommendation dated September 8, 2009, United States Magistrate Judge Janie S.

Mayeron recommended that the Court deny defendants' motions and an accompanying request for disclosure of grand jury transcripts. Defendants filed objections to that Report and Recommendation, which the Court reviews *de novo*. *See* 28 U.S.C. § 636(b)(1)(C); D. Minn. LR 72.2. For the reasons set forth below, the Court overrules defendants' objections and adopts the Magistrate Judge's Report and Recommendation.

## BACKGROUND

### I. FACTUAL AND PROCEDURAL BACKGROUND

The Indictment charged defendants with one count of conspiracy in violation of 18 U.S.C. § 371, nine counts of wire fraud in violation of 18 U.S.C. § 1343, seven counts of mail fraud in violation of 18 U.S.C. § 1341, one count of money laundering conspiracy in violation of 18 U.S.C. § 1956(h), and four counts of promotion of money laundering in violation of 18 U.S.C. § 1956(a)(1)(A)(i). The Indictment charged Morris with an additional count of making and subscribing a false return in violation of 26 U.S.C. § 7206(1). Those charges arose out of defendants' involvement with and activities as owners of a Minnesota corporation known as CyberStudy 101 ("CyberStudy").

According to the Indictment, in 1998, Minnesota implemented state legislation that provides tax credits for supplemental education instruction (the "education tax credit") to low-income Minnesota residents who had children in kindergarten through the twelfth grade. (Docket No. 1, ¶ 3); *see also* Minn. Stat. § 290.0674, subd. 1(1). Under that law, taxpayers list qualifying educational expenses on their Minnesota income tax return, and the Minnesota Department of Revenue directly reduces the amount of income

tax that the taxpayer owes by a percentage of the amount of the qualifying educational expenses. (Docket No. 1, ¶ 3.)

The Indictment alleges that prior to the year 2000, defendants began operating a website, cyberstudy101.com, as part of their CyberStudy business. (*Id.* ¶ 6.) According to the Indictment, prior to 2000, that website offered educational assistance to college students for a cost of $29.99. (*Id.*) The Indictment alleges that in 2000, however, defendants began marketing an Internet-based tutoring program for students in kindergarten through the twelfth grade (referred to in the Indictment and hereinafter as the "CyberStudy tutorial program"). (*Id.*) The CyberStudy tutorial program was designed to take advantage of the education tax credit, and charged families with one child $999 and families with two or more children $1499 to sign up for the program.[1]

The Indictment alleges that defendants told taxpayers that there would be no out-of-pocket costs to sign up for the CyberStudy tutorial program and that the taxpayers merely had to assign their applicable education tax credit to CyberStudy and authorize CyberStudy to file a tax return on behalf of the taxpayers. (*Id.* ¶ 7.) CyberStudy's printed materials claimed that the sign-up fees paid for the CyberStudy tutorial program, and taxpayers were promised the additional benefits of a "free computer" and Internet access. (*Id.*) The printed materials further represented that the CyberStudy tutorial program provided age-appropriate, interactive tutorial courses in a multitude of subject areas and offered a variety of tests in those subject areas. (*Id.* ¶ 8.). According to

---

[1] The Indictment alleges that the cost for families with two or more children rose to $1799 in 2001.

Paragraph 9 of the Indictment ("Paragraph 9"), "[c]ontrary to these representations, **there was no CyberStudy tutorial program in place whatsoever in 2000**." (*Id.* ¶ 9 (emphasis added).) Further, the Indictment alleges that even in 2001 and 2002, the CyberStudy tutorial program did not offer the courses and features outlined in CyberStudy's advertising materials. (*Id.*) Finally, the Indictment alleges that through their actions, defendants fraudulently obtained a total of $2.4 million from the Minnesota Department of Revenue "by filing or causing to be filed false and fraudulent tax returns on behalf of taxpayers whom [defendants] claimed had paid for, and been provided access to, the Cyberstudy tutorial program in 2000 and 2001." (*Id.* ¶ 14.)

Defendants were arraigned on January 20, 2009, and at that time the Magistrate Judge set the pretrial motions filing deadline as February 3, 2009, and set the motions hearing for February 18, 2009. (Docket No. 9.) On February 6, 2009, the Magistrate Judge granted defendants' motion to continue the filing deadline and the hearing date, extending the filing deadline until March 16, 2009, and the motions hearing to March 31, 2009. (Docket No. 19.) The pretrial motions hearing was held on March 31, 2009, and the Magistrate Judge issued her ruling on the parties' motions on May 15, 2009. (*See* Docket No. 27.)

## II. THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

On May 22, 2009, defendants filed motions to extend the deadline to file pretrial motions and to dismiss the Indictment, (Docket No. 29), and requested transcripts from the grand jury proceedings. (Docket No. 30 at 4-5.) Specifically, defendants argue that

the Government made material misrepresentations to the grand jury and made misstatements of fact in Paragraph 9 of the Indictment, which alleges that "there was no **CyberStudy tutorial program** in place whatsoever in 2000."[2] (Docket No. 1, ¶¶ 8-9 (emphasis added).) Defendants assert:

> In the present case, the assertion that **there was no Cyberstudy program** was critical to the Government's charges. Contrary to this assertion, program materials were in place. This false assertion corrupted the grand jury's understanding of the entirety of the circumstances that formed a basis for the charges. Thus it is highly probable that this false information substantially influenced the grand jury's decision to indict.

(Docket No. 30 at 3 (emphasis added).)

In support of their arguments, defendants refer the Court to conversations between defendants' counsel and the Assistant United States Attorney prosecuting the case, Timothy Rank. For the purposes of efficiency, the Court excerpts from the Report and Recommendation the Magistrate Judge's description of those events:

> [C]ounsel for Morris, Thomas Kelly, explained that the Government had issued a subpoena to Cyberstudy 101 for programs in existence in 2000 and that Cyberstudy 101 produced electronic records to the Government pursuant to subpoena. However, the records from the 2000 version of the tutorial program were not produced because they appeared to not be responsive to the subpoena, but they in fact did exist. Further, according to Kelly, directly after the first motions hearing in this case, Kevin Short, then-counsel for defendant . . . Louper-Morris, had a discussion with Timothy Rank, the Assistant United States Attorney prosecuting this case. During that conversation, Short (and therefore, the defendants) discovered for the first time that the Government had not seen a 2000 version of the

---

[2] Notably, defendants' brief in support of their motions inaccurately quotes the relevant language as stating, "[c]ontrary to these representations, there was no Cyberstudy 101 program in place whatsoever in 2000." (Docket No. 30 at 1-2.) Defendants' quote adds the language "101" after "Cyberstudy" and omits the phrase "tutorial program." As discussed below, that inaccurate statement forms the basis for and reflects a material flaw in defendants' arguments.

> Cyberstudy program, and that the grand jury had never seen any program purporting to be the Cyberstudy online tutorial as it existed in 2000.
>
> In response to Kelly's statements, Rank explained that he had a conversation with Short in February of 2009, after the first appearances in this case. Short told Rank that he thought he had produced some electronic media to the Government, but Rank told Short that he had not. Rank further represented to the Court that he had received no electronic files from defendants until the week of the July 8, 2009 hearing, and that he still has not seen anything regarding the Cyberstudy tutorial program for the year 2000.
>
> On May 22, 2009, Paul Edlund replaced Short as defendant Louper-Morris's counsel. At the July hearing, Edlund represented to the Court that he had received electronic media from Short when he was retained, and that on July 1, 2009, Edlund delivered to Rank this electronic media in the form of floppy disks.

(Report and Recommendation, Docket No. 42 at 4-5 (footnotes and citation omitted).)

In further support of their motions, defendants submitted an affidavit by defendant Morris, which stated: "CyberStudy 101, Inc. sold a tutorial program called 'CyberStudy 101' that existed online starting 1998. . . . Any representation by the prosecutor that 'CyberStudy 101' did not exist in 2000 was inaccurate and served to mislead the Grand Jury." (Morris Aff., Docket No. 40, ¶¶ 3-4.)

The Magistrate Judge recommended that this Court deny the motion to extend the time for filling motions, deny the motion to dismiss the Indictment, and deny defendants' request for grand jury transcripts. In particular, the Magistrate Judge concluded that defendants did not demonstrate good cause for filing the instant motion more than two months after the deadline for filing pretrial motions. Moreover, the Magistrate Judge found that the motion to dismiss failed on the merits because defendants did not demonstrate that the Government made any misrepresentations in the Indictment or to the

grand jury. Finally, the Magistrate Judge concluded that defendants did not show a particularized need for the grand jury records and concluded that defendants' request for those transcripts should therefore be denied.[3]

## DISCUSSION

The Indictment alleges that defendants operated a website "[p]rior to 2000 . . . called 'CyberStudy' 101 . . .[,] which offered educational assistance for college students at a cost of approximately $29.99." (Docket No. 1, ¶ 6.) The Indictment further alleges that in 2000, defendants "began marketing an Internet-based tutoring program called CyberStudy 101 for students in kindergarten through twelfth grade." (*Id.*) The Indictment defined this latter program as "the 'CyberStudy tutorial program.'" (*Id.*) Indeed, it is the latter program that forms the basis for the charges in the Indictment, as only that program is related to or sought to take advantage of Minnesota's education tax credit. (*Id.* ¶¶ 6-8.)

There appears to be some confusion on defendants' part regarding the import of the challenged sentence in Paragraph 9. Indeed, defendants misquote language from that paragraph in their supporting brief, representing that it states, "[c]ontrary to [defendants'] representations, there was no Cyberstudy 101 program in place whatsoever in 2000." (Docket No. 30 at 1-2.) Instead, the Indictment reads, "there was no **CyberStudy**

---

[3] Defendants do not object to the Magistrate Judge's denial of their request for grand jury transcripts. The Court finds that the Magistrate Judge correctly concluded that defendants did not demonstrate a particularized need for those records, and their request is therefore denied. *See* Fed. R. Crim. P. 6(e)(3)(E)(ii); *United States v. Warren*, 16 F.3d 247, 253 (8th Cir. 1994).

- 7 -

**tutorial program** in place whatsoever in 2000." (Docket No. 1, ¶ 9 (emphasis added).) Defendants omit from their quote the phrase "tutorial program" and add "101" in its place. Those alterations are material to the instant discussion, as it is undisputed that CyberStudy 101 existed as a program for college students in and before 2000.

I. THE MOTION FOR EXTENSION OF TIME TO FILE PRETRIAL MOTIONS IS DENIED.

Under Rule 12(b)(3) of the Federal Rules of Criminal Procedure, "a motion alleging a defect in instituting the prosecution" or a "motion alleging a defect in the indictment" must be made before trial. Fed. R. Crim. P. 12(b)(3)(A)-(B). Rule 12(c) provides that "[t]he court may, at the arraignment . . . , set a deadline for the parties to make pretrial motions and may also schedule a motion hearing." Fed. R. Crim. P. 12(c). "A party waives any Rule 12(b)(3) defense, objection, or request not raised by the deadline the court sets under Rule 12(c) or by any extension the court provides." Fed. R. Crim. P. 12(e). The Court may grant relief from waiver, however, "for good cause." *Id.*

Defendants argue that good cause supports their delay in bringing the motion to dismiss after the motions filing deadline of March 15, 2009. First, defendants assert that they were "unaware that the Government had not seen the 2000 online version of Cyberstudy101.com which is material evidence to the indictment." (Objections, Docket No. 45 at 1.) Defendants claim that they discovered after the pretrial motions hearing on March 31, 2009, that neither the Government nor the grand jury had seen that evidence, and that the new information prompted their filing of the instant motions. Second, defendants note that the replacement of Kevin Short with Paul Edlund as Louper-

Morris's counsel further delayed the filing of the motion because Edlund "needed additional time to be familiarized with the case." (*Id.*)

The Court agrees with the Magistrate Judge, however, that defendants have not demonstrated good cause for the Court to grant them relief from waiver of their 12(b)(3) motion to dismiss. Even assuming that defendants were first put on notice of the alleged misrepresentation during Short's conversation with Rank, defendants did not bring their motion to extend or motion to dismiss until almost two months later. Moreover, it is unclear what effect Edlund's substitution has here. Although defendants claim that Edlund needed additional time to familiarize himself with the case, Edlund's notice of attorney appearance and substitution was filed on May 22, 2009 – the same day the instant motions were filed by **both** Morris's and Louper-Morris's counsel.

Defendants have also not shown that there is "newly discovered information" regarding the allegation in Paragraph 9. Edlund noted at the hearing on these motions that the information on the disks that were provided to the prosecution did not establish that there was a kindergarten-through-twelfth-grade tutorial program in existence in 2000. Specifically, Edlund stated that "there is not and has not been a disk or any electronic media that shows that site, or what it was like during that time." (Tr., Docket No. 44 at 30:19-21.). Further, when questioned about whether Edlund had "possession of any disk that would show the CyberStudy tutorial program in existence in 2000 for K through 12," Edlund responded "I don't have, nor do I have reason to believe that there are such disks." (*Id.* at 31:20-21.) Rather, the disks provided to Rank offered evidence

of the CyberStudy program for college students, (*see id.* at 30:1-31:21), which is not the basis for the Indictment.

In sum, defendants have not demonstrated good cause to extend the motions filing deadlines. Further, as discussed *infra*, the Magistrate Judge correctly concluded that defendants' motion to dismiss fails on the merits.

## II. THE MOTION TO DISMISS THE INDICTMENT IS DENIED.

The Magistrate Judge concluded that based on Edlund's representations at the hearing that the record was "devoid of any facts to support the proposition that the Government made any misrepresentations in the Indictment, much less to the Grand Jury." (Report and Recommendation, Docket No. 42 at 8-9.) Defendants argue that the Magistrate Judge erred in arriving at that conclusion because the Magistrate Judge misconstrued Edlund's arguments and because the Magistrate Judge did not consider the Morris Affidavit or exhibits introduced at the hearing. (Objections, Docket No. 45 at 2.)

### A. The Magistrate Judge Did Not Misconstrue Edlund's Arguments.

As noted above, Paragraph 9 unequivocally alleges that there was no "CyberStudy tutorial program" in 2000; that is, the Indictment alleges that there was no K through 12 tutorial program in place in 2000. Indeed, at the hearing on these motions, Edlund, Louper-Morris's counsel, represented to the Court that he had no evidence to support a contrary conclusion:

> **THE COURT**: So, if Mr. Kelly had an impression that Mr. Short had some disks that showed the CyberStudy tutorial program that was being promoted for K through 12, he is incorrect about that impression?

> **MR. EDLUND**: Based on my understanding, yes, Your Honor. . . .
>
> **THE COURT**: But, in other words, . . . you don't have possession of any disk that would show the CyberStudy tutorial program in existence in 2000 for K through 12?
>
> **MR. EDLUND**: Correct. I don't have, nor do I have reason to believe that there are such disks.

(Tr., Docket No. 44 at 31:2-21.)

Defendants assert that the Magistrate Judge misconstrued this testimony to find that Edlund "stated that there were no records regarding the CyberStudy tutorial program for 2000; Edlund also represented there was no reason to believe that any such evidence existed." (Report and Recommendation, Docket No. 42 at 8.) Defendants' arguments appear to be premised on the notion that cyberstudy101.com existed in some capacity prior to 2001. Indeed, there is no dispute among the parties or from the Magistrate Judge that CyberStudy existed prior to 2001 as a program for college students. It is clear, however, the Edlund represented to the Magistrate Judge that there were no electronic media documenting the existence of the **CyberStudy tutorial program** for K through 12 students. Accordingly, the Magistrate Judge did not err in arriving at that factual finding.

### B. The Magistrate Judge Did Not Err in Not Considering the Morris Affidavit or Exhibits Introduced at the Hearing.

Defendants also argue that the Magistrate Judge erred in failing to consider the Morris Affidavit or three documents that were introduced at the hearing that demonstrate that "Cyberstudy 101 was an online service before and in 2000 . . . [and] that it was approved to qualify for the Minnesota Education Tax Credit." (Objections, Docket

No. 45 at 2.) Specifically, defendants note that in his affidavit, Morris asserts that "CyberStudy 101, Inc. sold a tutorial program called 'CyberStudy 101' that existed online starting 1998. . . . Any representation by the prosecutor that 'CyberStudy 101' did not exist in 2000 was inaccurate and served to mislead the Grand Jury." (Morris Aff., Docket No. 40, ¶¶ 3-4.) Defendants also produced three documents that they purport were in the Government's possession at the time of the Indictment – a news release from the Minnesota Department of Administration, a letter from the Minnesota Department of Children, Families and Learning to the Minnesota Department of Revenue, and an email from officials at the Department of Revenue to CyberStudy 101 – that defendants argue establish that "CyberStudy 101 was an online service before and in 2000." (Objections, Docket No. 45 at 2.) Here, however, the Magistrate Judge did not err in failing to consider those submissions.

"An indictment returned by a legally constituted and unbiased grand jury, . . . if valid on its face, is enough to call for trial of the charge on the merits." *United States v. Costello*, 350 U.S. 359, 363 (1956). Insufficient evidence is not a basis for dismissal of a facially valid indictment. *Id.* at 363-64. "[I]n order to have a charge dismissed for an alleged misstatement or even a perjurious statement [before the grand jury], [the defendant] must show that the misstatements were material." *United States v. Moore*, 184 F.3d 790, 794 (8th Cir. 1999). "[M]isstatements or mistakes alone [do not] justify the dismissal of an indictment which is valid on its face." *United States v. Levine*, 700 F.2d 1176, 1180 (8th Cir. 1983).

At this stage of the case, defendants' attempt to challenge the Indictment based on disputed facts is inappropriate. *See Costello*, 350 U.S. at 363-64; *see also United States v. Reyes-Echevarría*, 345 F.3d 1, 5 (1st Cir. 2003) ("[L]eaving indictments open to evidentiary challenges would [mean] that before trial on the merits a defendant could always insist on a kind of preliminary trial to determine the competency and adequacy of the evidence before the grand jury." (internal quotation marks omitted; alteration in original)). To the extent that defendants disagree with the underlying facts supporting the Indictment, they may challenge the credibility of that evidence at trial.

Further, the Court is not persuaded that the challenged statement in Paragraph 9, or any misstatement or mistake therein, has significant bearing on the validity of the Indictment. As the Government accurately states, the "gravamen" of the allegations in the Indictment is that "the CyberStudy tutorial program did not in fact offer the courses and features promised by CyberStudy in its advertising materials," and that defendants "falsely described the CyberStudy tutorial program to the Minnesota Department of Revenue and to CyberStudy customers." (Docket No. 46 at 11; Docket No. 1, ¶¶ 9, 22(a).) As a consequence, the mere "existence" (or absence) of some form of the K through 12 tutorial program in 2000 is not sufficiently relevant to the core of the Indictment to call into question its underlying validity.[4]

---

[4] Assuming the Court would consider the Morris Affidavit in the context of the motion to dismiss, Morris attests only to the existence of "CyberStudy 101" in 2000 and before. However, any challenge to the substance of Paragraph 9 or any argument that the Government made a material misrepresentation in Paragraph 9 would presumably address the existence of the

(Footnote continued on next page.)

# ORDER

Based on the foregoing, and all the files, records, and proceedings herein, the Court **OVERRULES** defendants' objections [Docket No. 45] and **ADOPTS** the Report and Recommendation of the Magistrate Judge dated September 8, 2009, [Docket No. 42]. Accordingly, **IT IS HEREBY ORDERED** that:

1. Defendants' Motion for Extension of Time to File Pretrial Motions and Dismissal of Indictment [Docket No. 29] is **DENIED.**

2. Defendants Carolyn M. Louper-Morris's and William J. Morris, Jr.'s Request for Grand Jury Transcripts [Docket No. 30 at 4-5] is **DENIED.**

DATED: December 14, 2009             ____s/ John R. Tunheim____
at Minneapolis, Minnesota.                 JOHN R. TUNHEIM
                                                         United States District Judge

---

(Footnote continued.)

CyberStudy tutorial program for K through 12 students. On that issue, the Morris Affidavit is silent.