# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>(1) CAROLYN M. LOUPER-MORRIS<br><br>and<br><br>(2) WILLIAM J. MORRIS, JR.,<br><br>Defendants. | Criminal No. 08-063 (JRT/JSM)<br><br><br><br>**ORDER DENYING DEFENDANTS' MOTION FOR NEW TRIAL** |

David M. Genrich, John R. Marti, and Timothy C. Rank, Assistant United States Attorneys,, **OFFICE OF THE UNITED STATES ATTORNEY**, 600 United States Courthouse, 300 South Fourth Street, Minneapolis, MN, 55415, for plaintiff.

Paul J. Edlund, 212 Third Avenue North, Suite 545, Minneapolis, MN, 55401, for defendant Louper-Morris.

Lyonel Norris, Assistant Federal Defender, **OFFICE OF THE FEDERAL DEFENDER**, 300 South Fourth Street, Suite 107, Minneapolis, MN, 55415; for defendant Morris.

On February 2, 2010, a jury convicted defendants Carolyn Louper-Morris and William Morris, Jr. on several charges relating to a scheme employing an online tutorial program and computers to fraudulently obtain an educational tax credit. (Docket Nos.

80-81.) Defendants have moved for a new trial, claiming that the government's alleged intimidation of a potential defense witness denied them due process. (Docket No. 96.)[1]

## BACKGROUND

The Court ordered an evidentiary hearing on June 30, 2010 to address the allegations which form the basis for the instant motion. (*See* Tr., Docket No. 99.) During the trial, Michelle Garcia-Strait was initially called as a potential defense witness, and arrived at the courthouse to offer testimony in this case. (*Id.* at 4.) While she was waiting in the defense room Inspector Mary Agnew, a government agent, asked Ms. Garcia-Strait "to come with her to go over some question" in the prosecution's room across the hall (*Id.* at 5.) During an approximately five to ten minute conversation, Inspector Agnew asked Ms. Garcia-Strait about the subject of her testimony. (*Id.* at 6, 12.) Specifically, Ms. Garcia-Strait was asked about the information she had previously disclosed to the defense. (*Id.* at 14.) When Ms. Garcia-Strait could not recall the answers to Inspector Agnew's questions about her payments from defendants' enterprise, Ms. Agnew "pulled out a packet" including information such as Ms. Garcia-Strait's driver's license and "[what] looked like [her] statement to the defense" to help her recall the information. (*Id.* at 6.) On the basis of these actions, Ms. Garcia-Strait allegedly "felt intimidated[.]" (*Id.*)

---

[1] Defendant Louper-Morris also moved the Court to continue her sentencing pending the disposition of the instant motion. (Docket No. 111.) The Court denied the motion to continue sentencing. (Docket No. 112.)

Ms. Garcia-Strait testified that she was never told by the government that she should not testify, nor was she threatened in any way. (*Id.* at 8.) To the contrary, **according to Ms. Garcia-Strait she was still willing to testify but defense counsel told her to leave**. (*See id.* at 19-20, 24.)[2] As both defense counsel and Ms. Garcia-Strait explained, the concern with Ms. Garcia-Strait's testimony was her vulnerability to cross-examination about her pending fraud and forgery charges in state court. (*See id.* at 25-26; *see also* Mem. in Opp'n at 4, Docket No. 101 (citing defense counsel Edlund's statement on January 29, 2010 that "if we're not able to know what the government would cross her on, we would then not be able to put her up in good faith on behalf of our clients because that would then potentially expose her to cross-examination on allegations of fraud").) The following colloquy occurred between the government and Ms. Garcia-Strait during the June 30, 2010 hearing:

---

[2] As Ms. Garcia-Strait explained:

Q: So following the lunch break, court reconvenes?
A: Mm-hmm (Yes).
Q: And did you have another conversation with one or both of the defense lawyers?
A: Yes, I did, with Mr. Morris's attorney at the time.
Q: Okay. Mr. Kelly?
A: Yes.
Q: And what did you tell Mr. Kelly at that time?
A: **That I wanted to testify still.**
Q: Okay. And what did Mr. Kelly say?
A: **He said, I thought I told you to leave**.

(*Id.* at 18-19 (emphasis added).)

Q. And this is with respect to the felony fraud and forgery charges that you had pending in Wright County, correct?

A. Yes.

Q. You were operating a charter school in Wright County, the Kaleidoscope School?

A. What does this have to do with my testimony today?

Q. You said that one of the things that Mr. Kelly [defense counsel] was trying to figure out was whether you would get cross-examined on those issues?

A. Correct. **This is exactly why I was afraid to testify, yes.**

Q. **You were afraid to testify because you could get cross-examined on** --

A. By you, yes.

Q. -- **on issues related to your pending felony fraud and forgery charges?**

A. **Yes.**

(Tr. at 25-26, Docket No. 99 (emphasis added).)

Nonetheless, Ms. Garcia-Strait subsequently sent both an email and facsimile communication to the Court expressing her concern that she had been intimidated by the government (*id.* at 4-5), and defendants now argue that the government's alleged intimidation prevented her from testifying in violation of their due process rights.

## DISCUSSION

As an initial matter, the Court notes that the parties were instructed to file any motions based on Ms. Garcia-Strait's testimony within fourteen days of the June 30, 2010 hearing. (*See* Minute Entry, Docket No. 95.) Defendants filed the instant motion fifteen days later, on July 15, 2010. (Docket No. 96.)

Putting aside issues of timeliness, however, the Court concludes that defendants' motion for new trial is without merit and must be denied. A defendant's "right to present his own witnesses to establish a defense . . . is a fundamental element of due process of law." *Washington v. Texas*, 388 U.S. 14, 19 (1967). **Substantial** government interference with a defense witness's choice to testify may violate a defendant's due process right to present unhampered testimony of witnesses in his defense. *See, e.g.*, *United States v. MacCloskey*, 682 F.2d 468, 475, 479 (4th Cir. 1982) (new trial warranted where a United States Attorney made an "eleventh hour call" to an attorney for a witness against whom charges had been dropped and stated that the attorney should advise his client that "if she testified . . . she could be reindicted if she incriminated herself during that testimony"); *United States v. Hammond*, 598 F.2d 1008, 1012 (5th Cir. 1979) (due process violation where an FBI agent threatened to retaliate against a defense witness, promising "nothing but trouble" in Colorado where the witness faced a state indictment).

As the above record citations make clear, the government's alleged intimidation in this case does not even approach the type of conduct which has provided a basis for finding a due process violation. A government agent questioned Ms. Garcia-Strait for five to ten minutes about the same information she had previously disclosed to the defense. (*See* Tr. 4-14, Docket No. 99.) As Ms. Garcia-Strait conceded, the government did not tell her not to testify or threaten her in any way. (*Id.* at 8.) **Defense counsel decided not to call Ms. Garcia-Strait**, and Ms. Garcia-Strait was concerned about testifying, **because of the possibility that she would be subject to cross-examination**

**about pending state charges against her**. (*See* Tr. 19-20, 24-26, Docket No. 99; *see also* Mem. in Opp'n at 4, Docket No. 101.)

On this record, the Court cannot conclude that any impermissible governmental interference occurred, let alone to a degree warranting a new trial. Defendants' assertions that Ms. Garcia-Strait "was alone in unfamiliar surroundings" during her discussion with the government agent, that she was shown a folder of documents including a copy of her interview with the defense, and that the agent "could have asked her questions in the hallway" but instead spoke with her behind a closed door do not compel a different result. (Reply to Opp'n at 2, Docket No. 105); *see United States v. Anwar*, 428 F.3d 1102, 1113 (8th Cir. 2005) (finding no constitutional violation where government's allegedly intimidating comments did not cause witness to refuse to testify and witness was present at the courthouse but not called by the defense). Although government agents need to be careful in approaching defense witnesses to avoid intimidation, the Court finds that no impermissible conduct occurred in this case.

Even if the government had somehow interfered with defendants' right to present witnesses, a proposition devoid of evidentiary support, the Court concludes that Ms. Garcia-Strait's testimony would not have affected the outcome in this case given the weight of evidence supporting defendants' conviction. *See Peeler v. Wyrick*, 734 F.2d 378, 381-82 (8th Cir. 1984) (harmless error analysis applicable to a motion for new trial based on a claim of witness intimidation).

**ORDER**

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that defendants' motion for new trial [Docket No. 96] is **DENIED.**

DATED: September 29, 2010
at Minneapolis, Minnesota.

                                                                                                   _s/ John R. Tunheim_
                                                                                               JOHN R. TUNHEIM
                                                                     United States District Judge